[No. G035423. Fourth Dist., Div. Three. Feb. 14, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY ESPANA, Defendant and Appellant.

## COUNSEL

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—In a prior opinion (*People v. Espana* (Nov. 19, 2004, G033182) [nonpub. opn.]), we affirmed defendant Johnny Espana's conviction of second degree robbery but struck the order for defendant to supply a blood and saliva sample under Penal Code section 296 (all statutory references are to this code) because he was not convicted of an offense enumerated in that statute. We remanded the case for further proceedings to consider defendant's request to have the sample removed from any law enforcement or DNA data bank.

Before the case returned to the trial court, however, the electorate passed Proposition 69, amending the DNA and Forensic Identification Data Base and Data Bank Act of 1998 (§ 295 et seq.; DNA Act), including sections 296 and 296.1. As amended, those sections broadened the scope of qualifying offenses to include collection of DNA from any person with a felony conviction and any person who is imprisoned, confined, or placed in a state correctional facility. The trial court denied defendant's unopposed motion to expunge his previously submitted DNA sample, stating that expungement

would be futile in light of section 296's amendment and it was "not going to require the Department of Corrections to delete the test [it has] already taken and obtain a new one." The court also held that section 296 did not violate the United States Constitution's ex post facto clause.

On appeal, defendant contends the trial court had no choice but to return his DNA samples and expunge any test results in light of our prior opinion. He also asserts that even if the trial court could properly determine those actions would be futile given the amendments to the DNA Act, the application of those amendments to his case violates the ex post facto clause. We disagree and affirm.

## DISCUSSION

*Premature Determination of Futility*

Defendant contends that, in light of our prior opinion, his DNA samples were illegally obtained and the trial court erred in "leap[ing] over the question whether the samples were required to be returned based upon the unlawful seizure to a practical conclusion that to do so would [be] or was futile." According to defendant, the trial court was required to order his DNA samples expunged and to leave for another day the issue of whether requiring him to submit new DNA samples under revised section 296 violates the ex post facto clause. We disagree.

Under section 296.1, as amended, "[A]ny person . . . who is imprisoned or confined or placed in a state correctional institution . . . after a conviction of any felony . . . whether or not that crime or offense is one set forth in subdivision (a) of Section 296" is required to provide a DNA sample if "[t]he person has a record of any past or present conviction . . . of a qualifying offense described in subdivision (a) of Section 296" and the Department of Justice does not already have the person's DNA sample. (§ 296.1, subd. (a)(2)(A).) The same applies to "[a]ny person . . . who has a record of any past or present conviction . . . for an offense set forth in subdivision (a) of Section 296, and who is on probation or parole for any felony . . . whether or not that crime or offense is one set forth in Subdivision (a) of section 296 . . . ." (§ 296.1, subd. (a)(3)(A).) The obligation imposed by section 296.1 is both mandatory and retroactive for any felony conviction received before the initiative's enactment. (§ 296.1, subds. (a)(2)(A), (b)(1).)

Here, defendant was sentenced in November 2003 to 12 years in state prison. Only a little over two years have passed and the record contains no indication of any early release. But regardless of whether he remains incarcerated or has been released, the express language of section 296.1 makes

clear that if defendant's original DNA sample were expunged, he would be required to submit a new sample as either an inmate or a parolee. It would be an idle act to remove defendant's DNA from the data bank if the state could turn around and compel a new DNA sample and then again place it in the data bank. " 'The law neither does nor requires idle acts.' (Civ. Code, § 3532.)" (*People v. Lipscomb* (1968) 263 Cal.App.2d 59, 64 [69 Cal.Rptr. 127]; see *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 [107 Cal.Rptr.2d 729].) The trial court did not err in denying defendant's expungement motion.

*Violation of Ex Post Facto Clause*

This brings us to defendant's second contention that applying the DNA Act amendments to him violates the ex post facto clause. Defendant "concede[s] that the mere requirement that a convicted felon give a blood or saliva sample for testing is not in and of itself a violation of the *ex post facto* clause of the federal constitution." (See *Rise v. Oregon* (9th Cir. 1995) 59 F.3d 1556, 1562, overruled on another ground in *Ferguson v. City of Charleston* (2001) 532 U.S. 67 [149 L.Ed.2d 205, 121 S.Ct. 1281]; and *City of Indianapolis v. Edmond* (2000) 531 U.S. 32 [148 L.Ed.2d 333, 121 S.Ct. 447] [Oregon statute requiring prisoners to provide DNA samples does not violate ex post facto clause because statute's purpose is to create data bank to help identify and prosecute criminals, not punish convicts].)

Defendant nevertheless contends the DNA Act violates the ex post facto clause because it imposes a more burdensome punishment upon a convicted felon. (See *Collins v. Youngblood* (1990) 497 U.S. 37, 42–43 [111 L.Ed.2d 30, 110 S.Ct. 2715] [ex post facto law includes one that makes more burdensome punishment for crime after its commission].) He relies on section 296.1, subdivision (a)(1)(A) and section 298.1.

■ Section 296.1, subdivision (a)(1)(A) requires that adults arrested for certain felony offenses, including defendant's second degree robbery offense, shall provide DNA specimens "immediately following arrest . . . or as soon as administratively practicable after arrest, but, in any case, prior to . . . any physical release from confinement or custody." Defendant argues this provision "require[s] that an individual who refuses to provide a sample be held in custody until such sample is provided (including past a release date)." Defendant is mistaken.

Defendant cites *Jones v. Murray* (4th Cir. 1992) 962 F.2d 302 (*Jones*). *Jones* considered Virginia's former DNA collection statute (Va. Code, § 19.2-310.2), which provided: " 'Notwithstanding the provisions of 53.1-159 [mandating that all inmates be released on parole six months before the date of final discharge], any person convicted of a felony who is in custody

after July 1, 1990, shall provide a blood sample prior to his release.' " (*Jones, supra*, 962 F.2d at p. 308, italics omitted.) To the extent the statute's reference to Virginia's mandatory parole provision meant a prisoner could be held in prison during the mandatory parole period unless he provided the blood sample, *Jones* states "the prisoner would be held beyond the time of release contemplated by the original sentence and a term of his sentence, thereby, would be made more onerous *ex post facto*. [Citation.]" (*Id.* at p. 310.) The court concluded, however, that the statute would be constitutional if the phrase "Notwithstanding the provisions of 53.1-159," referencing mandatory parole, were stricken from the statute. (*Jones, supra*, 962 F.2d at p. 311.) Virginia's statute now reads: "[A]ny person convicted of a felony who is in custody after July 1, 1990, shall provide a blood, saliva or tissue sample prior to his release." (Va. Code, § 19.2-310.2.)

The statute here is unlike the one found unconstitutional in *Jones*. Section 296.1 contains no language referencing any parole or other date and is substantially the same as the revised Virginia statute that *Jones* declared would be constitutional.

■ No California case has directly considered whether a statute requiring a defendant, convicted of a qualifying offense before the effective date of the statute, to provide a DNA sample before release from confinement or custody violates the ex post facto clause of the federal Constitution. Other jurisdictions have, however. In *Doe v. Gainer* (1994) 162 Ill.2d 15 [642 N.E.2d 114, 204 Ill.Dec. 652], the Illinois Supreme Court held that an Illinois statute requiring a defendant to provide a DNA specimen at a certain time " 'prior to his release' " was a "timing provision rather than an enforcement mechanism" and therefore did not violate the ex post facto clause. (*Id.* at p. 116, italics omitted; accord, *Gilbert v. Peters* (7th Cir. 1995) 55 F.3d 237, 239 (*Gilbert*) [following *Doe v. Gainer, supra*, 642 N.E.2d at p. 116].) We find these decisions persuasive and conclude section 296.1's language requiring the DNA specimen be obtained "prior to . . . any physical release from confinement or custody release" serves as a timing provision that specifies the time when a prisoner must submit a DNA sample, i.e., while in prison and not after his or her release.

■ Section 298.1, in contrast, is an enforcement provision. It provides that any person who refuses to give the DNA samples required by the statute after notice is guilty of a misdemeanor punishable as a separate offense by both a fine and imprisonment, or if the person is already imprisoned, "by sanctions for misdemeanors according to a schedule determined by the Department of Corrections." (§ 298.1, subd. (a).) Defendant contends this statute violates the ex post facto clause because if he were to be "released without providing the samples or refused to give a sample while in custody, he becomes subject to a new, criminal violation [under section 298.1]." We find no violation of the ex post facto clause.

■ Counsel has not cited any case on point, California or otherwise, and we have found none. *Gilbert v. Peters, supra,* 55 F.3d 237, cited by the Attorney General, is instructive in that it rejects a similar argument made by the defendant there, agreeing instead with the district court that "any sanctions would result from an inmate's refusal to comply with valid prison regulations rather than from the commission of the crime for which he was sentenced." (*Id.* at p. 239.) As *Gilbert* explained, the ex post facto clause " 'does not prevent prison administrators from adopting and enforcing reasonable regulations that are consistent with good prison administration. . . . [C]hanges in conditions of confinement . . . and denials of privileges— matters which every prisoner can anticipate are contemplated by his original admission to prison—are necessarily functions of prison management.' [Citation.]" (*Ibid.,* quoting *Jones, supra,* 962 F.2d at p. 309 ["It is precisely because reasonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner, that they do not constitute additional punishment and are not classified as *ex post facto.*"].)

*Gilbert* and *Jones,* however, both involved amendment to prison regulations increasing the penalties for failure to comply. Neither involved the situation where, as here, a failure or refusal to provide the required DNA sample subjects a defendant to a new, criminal violation.

■ A similar issue was addressed in *Russell v. Gregoire* (9th Cir. 1997) 124 F.3d 1079, which found no ex post facto violation in the new crime imposed on an offender, convicted prior to the passage of the sex registry act, who fails to register. "We emphasize that the crime of failing to register under the Act constitutes a separate offense. The fact that a prior conviction for sexual misconduct is an element of the 'failure to register' offense is of no consequence. It is hornbook law that no *ex post facto* problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed." (*Id.* at pp. 1088–1089.)

The district court in *Miller v. United States Parole Comm'n* (D.Kan. 2003) 259 F.Supp.2d 1166 (*Miller*), cited *Russell v. Gregoire, supra,* 124 F.3d 1079, in rejecting a federal parolee's contention that the Patriot Act, which created a new misdemeanor offense for failure to provide a DNA sample, violates the ex post facto law because when he committed the predicate offense of kidnapping he was not subject to prosecution and conviction for failing to provide a DNA sample. (*Miller, supra,* 259 F.Supp.2d at pp. 1172–1173.) *Miller* noted that "[t]he Patriot Act does not . . . apply to all offenders convicted of qualifying felonies; it only applies to such offenders who fail to provide a DNA sample." (*Id.* at p. 1173.) "While a prior conviction for a qualifying offense is an element of the new crime of failing to give a DNA

sample, it is the conduct of failing to give the sample that triggers the new charge and punishment. Thus it cannot be said that the statute is unconstitutional." (*Ibid.*, fn. omitted.)

█ These federal cases are persuasive. Defendant's failure or refusal to give a DNA specimen and not the underlying conviction is what exposes him to penalties under the DNA Act. The possible sanctions outlined in section 298.1 do not punish for past conduct, i.e., the original criminal conviction, but instead it is the separate offense of failing to give a sample that triggers the new charge and punishment. Therefore, section 298.1 does not violate the ex post facto clause.

## DISPOSITION

The order denying defendant's motion to return his DNA samples and to expunge any test results is affirmed.

Bedsworth, J., and Ikola, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2006, S141783.